Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HILLARD HARRISON, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| SEVERN BANCORP, INC., ALAN J. HYATT, KONRAD M. WAYSON, RAYMOND S. CROSBY, JAMES H. JOHNSON, JR., DAVID S. JONES, JOHN A. LAMON III, and MARY KATHLEEN SULICK, | |
| Defendants. | |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Hillard Harrison ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      This is an action against Severn Bancorp, Inc. ("Severn" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Severn by Shore Bancshares, Inc. ("Shore").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Severn common stock.

7. Defendant Severn, together with its subsidiaries, operates as a savings and loan holding company. The Company is incorporated in Maryland. The Company's common stock trades on the NASDAQ under the ticker symbol, "SVBI."

8. Defendant Alan J. Hyatt ("Hyatt") is President, Chief Executive Officer, and Chairman of the Board of the Company.

9. Defendant Konrad M. Wayson ("Wayson") is Vice Chairman of the Board of the Company.

10. Defendant Raymond S. Crosby ("Crosby") is a director of the Company.

11. Defendant James H. Johnson, Jr. ("Johnson") is a director of the Company.

12. Defendant David S. Jones ("Jones") is a director of the Company.

13. Defendant John A. Lamon III ("Lamon") is a director of the Company.

14. Defendant Mary Kathleen Sulick ("Sulick") is a director of the Company.

15. Defendants Hyatt, Wayson, Crosby, Johnson, Jones, Lamon, and Sulick are collectively referred to herein as the "Individual Defendants."

16. Defendants Severn and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

17. On March 3, 2021, Severn and Shore announced that they had entered into a definitive agreement under which Severn would merge with and into Shore in a stock and cash transaction. Under the terms of the agreement, Severn shareholders will have the right to receive 0.6207 shares of Shore common stock and $1.59 in cash for each share of Severn common stock they own. The cash portion of the consideration will be fixed at $1.59 per share. Existing Shore shareholders will own approximately 59.6% of the outstanding shares of the combined company and Severn shareholders are expected to own approximately 40.4%.

18. The press release announcing the Proposed Transaction states, in pertinent part:

3

**Shore Bancshares, Inc. and Severn Bancorp, Inc. Announce Execution of Merger Agreement Creates 3rd Largest Bank Headquartered in Maryland**

Highlights of the Announced Transaction:
- Creates 3rd largest bank headquartered in Maryland
- The combined company will have 29 branch locations, providing increased market opportunities for current Severn products and services
- Enables Shore to continue expanding its Maryland market area by entering the greater Annapolis market, increasing its presence in Maryland by over 50% to $2.3 billion in deposits
- Increased scale provides improved opportunities to enhance efficiencies and leverage investment in technology
- Diversification of revenue for Shore
- Significant EPS accretion for Shore
- Increased liquidity and dividends for Severn shareholders

NEWS PROVIDED BY
**Shore Bancshares, Inc.; Severn Bancorp, Inc.**
Mar 03, 2021, 17:00 ET

EASTON, Md. and ANNAPOLIS, Md., March 3, 2021 /PRNewswire/ -- Shore Bancshares, Inc. (NASDAQ: SHBI) ( "Shore"), the holding company of Shore United Bank, and Severn Bancorp, Inc. (NASDAQ: SVBI) ("Severn"), the holding company of Severn Savings Bank, FSB, today announced they have entered into a definitive agreement under which Severn will merge with and into Shore in a stock and cash transaction valued at approximately $146 million (including common stock and stock options), or $11.30 per share of Severn common stock, based on a closing price for Shore's common stock of $15.64 as of March 2, 2021 and $1.59 per share in cash. Shore expects the transaction to be over 30% accretive to EPS in 2022, based on anticipated cost savings of approximately 35%. Severn is headquartered in Annapolis, Maryland with $952.6 million in total assets, $679.2 million in gross loans and $806.5 million in total deposits as of December 31, 2020. Severn operates seven banking offices located in Anne Arundel County, Maryland. The transaction will increase Shore's total assets to approximately $2.9 billion on a pro forma basis as of December 31, 2020.

\*   \*   \*

*Transaction Details*

Under the terms of the definitive agreement, which was unanimously approved by the Board of Directors of both companies, holders of Severn common stock will have the right to receive 0.6207 shares of Shore common stock and $1.59 in cash for each share of Severn common stock they own. Since the exchange ratio will be fixed at 0.6207, the common stock value of the consideration will float with Shore's stock price. The cash portion of the consideration will be fixed at $1.59 per share.

Existing Shore shareholders will own approximately 59.6% of the outstanding shares of the combined company and Severn shareholders are expected to own approximately 40.4%. Shore will appoint four Severn directors to the Shore Board, including Mr. Hyatt. Mr. Beatty will continue as Chief Executive Officer of the combined company and Mr. Hyatt will serve as Chairman of the Board of Directors.

The transaction is expected to close in the third quarter of 2021, subject to satisfaction of customary closing conditions, including regulatory approvals and shareholder approval from Shore and Severn shareholders. Severn directors, executive officers and certain shareholders have entered into agreements with Shore pursuant to which they have committed to vote their shares of Severn common stock in favor of the merger of Severn with and into Shore. Shore directors and executive officers have entered into agreements with Severn pursuant to which they have committed to vote their shares of Shore common stock in favor of the issuance of shares of Shore to Severn shareholders in the merger. For additional information about the proposed merger of Severn with and into Shore, shareholders are encouraged to carefully read the definitive agreement that will be filed with the Securities and Exchange Commission ("SEC") today.

Janney Montgomery Scott LLC acted as financial advisor to Shore in the transaction and delivered a fairness opinion to the Board of Directors of Shore. Holland & Knight LLP served as legal counsel to Shore. Piper Sandler & Co. acted as financial advisor to Severn and delivered a fairness opinion to the Board of Directors of Severn. Luse Gorman, PC served as legal counsel to Severn. A presentation regarding the merger announcement will be filed with the SEC and made available at the SEC's website, www.sec.gov, or by accessing Shore's website at www.shorebancshares.com under the "Investor Relations" link and then under the heading "Documents."

*About Shore Bancshares, Inc.*

Shore Bancshares, Inc. is the largest independent financial holding company headquartered on the Eastern Shore of Maryland. It is the parent company of Shore United Bank. The Bank operates 22 full-service branches in Baltimore County, Howard County, Kent County, Queen Anne's County, Talbot County, Caroline County, Dorchester County and Wicomico County in Maryland, Kent County, Delaware and Accomack County, Virginia. The Company engages in trust and wealth management services through Wye Financial Partners, a division of Shore United Bank.

*About Severn Bancorp, Inc.*

Severn Bancorp, Inc. is a savings and loan holding company chartered as a corporation in the state of Maryland in 1990. It conducts business primarily through three subsidiaries, Severn Savings Bank, FSB, Mid-Maryland Title Company, Inc. and SBI Mortgage Company. Founded in 1946, Severn Savings Bank is a full-

5

service community bank offering a wide array of personal and commercial banking products as well as residential and commercial mortgage lending. It has seven branches located in Annapolis, Crofton, Edgewater, Glen Burnie, Lothian/Wayson's Corner, and Severna Park.

19. On September 16, 2021, the Company filed a Schedule 14A Definitive Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

20. The Proxy Statement, which recommends that Severn shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Severn's and Shore's financial projections; (ii) the financial analyses performed by Severn's financial advisor, Piper Sandler & Co. ("Piper Sandler"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Company insiders.

21. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Severn's Reasons for the Merger; (iii) Recommendation of Severn's Board of Directors; (iv) Opinion of Severn's Financial Advisor; (v) Certain Unaudited Prospective Financial Information Regarding Severn Utilized by Severn's Board of Directors and Severn's Financial Advisor'; and (vi) Interests of Certain Severn Officers and Directors in the Merger.

22. Unless and until the material misstatements and omissions (referenced below) are remedied before the October 22, 2021 shareholder vote on the Proposed Transaction, Severn shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Severn's and Shore's Financial Projections

23. The Proxy Statement omits material information concerning Severn's and Shore's financial projections.

24. The Proxy Statement fails to disclose the individual inputs and assumptions underlying Severn's financial projections.

25. The Proxy Statement fails to disclose any of Shore's financial projections. This information is material as Severn shareholders are expected to own approximately 40.4% of the combined company, but without Shore's financial projections, the Company's shareholders cannot adequately evaluate and assess the value of Shore or the combined company.

26. The Proxy Statement provides that a reason the Board approved the Proposed Transaction and recommend that shareholders approve the Proposed Transaction is "the anticipated pro forma impact of the merger on SHBI, including potential synergies, and the expected impact on financial metrics such as earnings and tangible common equity per share, as well as on regulatory capital levels[.]"

27. The Proxy Statement, however, fails to disclose the amount and timing of the potential synergies anticipated by the Company to result from the Proposed Transaction, and the expected impact on the Company's financial metrics such as earnings and tangible common equity per share.

28. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's

financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

29. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Piper Sandler's Analyses

30. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Piper Sandler.

31. With respect to Piper Sandler's "*Comparable Company Analyses*" and "*Analysis of Precedent Transactions*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction Piper Sandler observed in its analyses.

32. The Proxy Statement fails to disclose the following concerning Piper Sandler's "*Net Present Value Analyses*": (1) the terminal values of the Company and of Shore; (2) the individual inputs and assumptions underlying the (i) earnings multiples ranging from 8.0x to 13.0x and from 10.0x to 15.0x, (ii) multiples of December 31, 2025 tangible book value ranging from 85% to 110% and from 80% to 130%, and (iii) discount rates ranging from 9.0% to 14.0% and of 13.04%; and (3) the basis for assuming Severn's and Shore's respective earnings varied from 15% above projections to 15% below projections.

33. With respect to Piper Sandler's "*Pro Forma Transaction Analysis*," the Proxy Statement fails to disclose the extent the Proposed Transaction transaction could be accretive to Shore's estimated earnings per share (excluding one-time transaction costs and expenses) in the years ending December 31, 2022 through December 31, 2025 and dilutive to Shore's estimated tangible book value per share at close and at December 31, 2022, December 31, 2023 and December 31, 2024 and accretive to Shore's estimated tangible book value at December 31, 2025.

34. The valuation methods, underlying assumptions, and key inputs used by Piper Sandler in rendering its purported fairness opinion must be fairly disclosed to Severn shareholders. The description of Piper Sandler's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Severn shareholders are unable to fully understand Piper Sandler's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

35. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

36. According to the March 3, 2021 press release announcing the Proposed Transaction, "Shore will appoint four Severn directors to the Shore Board, including Mr. Hyatt. Mr. Beatty will continue as Chief Executive Officer of the combined company and Mr. Hyatt will serve as Chairman of the Board of Directors."

37. The Proxy Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

38. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the

Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

39. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

40. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

42. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

43. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

44. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange

Act and Rule 14a-9 promulgated thereunder.

45. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

46. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power

to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

50. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and

any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

   B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

   C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

   D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

   E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 21, 2021        Respectfully submitted,

                 **HALPER SADEH LLP**

                 By: /s/ Daniel Sadeh
                 Daniel Sadeh, Esq.
                 Zachary Halper, Esq. (to be admitted *pro hac vice*)
                 667 Madison Avenue, 5th Floor
                 New York, NY 10065
                 Telephone: (212) 763-0060
                 Facsimile: (646) 776-2600
                 Email: sadeh@halpersadeh.com
                     zhalper@halpersadeh.com

                 *Counsel for Plaintiff*